1    WO

2

3

4

5

6

7                    **IN THE UNITED STATES DISTRICT COURT**

8                      **FOR THE DISTRICT OF ARIZONA**

9

10   William S. Fowler,                          No. CV-14-01918-TUC-CRP

11                    Plaintiff,                  **ORDER**

12   v.

13   Carolyn W. Colvin,
     *Acting Commissioner of Social Security.*
14

15                    Defendant.

16           Plaintiff has filed the instant action seeking review of the final decision of the

17   Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). The Magistrate Judge

18   has jurisdiction over this matter pursuant to the parties' consent. *See* 28 U.S.C. § 636(c).

19   Pending before the Court are Plaintiff's Opening Brief (Doc. 19) ("Plaintiff's Brief") and

20   Defendant's Response Brief (Doc. 20) ("Defendant's Brief"). For the following reasons,

21   the Court remands this matter further proceedings.

22   **BACKGROUND**

23           Plaintiff was 46 years of age on the July 1, 2010 alleged disability onset date, and

24   remains insured under the terms of the Social Security Act through December 31, 2015.

25   (Administrative Record ("AR.") 76; Doc. 19, p. 1) Plaintiff has a bachelor's degree in

26   accounting and worked in the past as a financial advisor, farm manager and bookkeeper.

27   (AR. 83; Doc. 19, p. 3)

28

On February 8, 2011, Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), and an application for Supplemental Security Income ("SSI") under 42 U.S.C. § 1381(a), alleging disability since July 1, 2010, due to bi-polar disorder and manic depression. (AR. 197-198, 199-205 ) The application was denied initially and upon reconsideration. (AR. 74-95, 139-146) Plaintiff appeared with counsel and testified before an Administrative Law Judge ("ALJ") at an administrative hearing on December 11, 2012. (AR. 32-73) At the hearing before the ALJ, Plaintiff testified that he previously abused alcohol, but entered a treatment facility and has not consumed alcohol since October 2010. (AR. 40-41) Plaintiff previously abused the prescription drug Ambien, but stopped using it in January 2011 when Plaintiff was treated and released from St. Joseph's Hospital after he crushed and snorted Ambien. (AR. 42, 52, 546) Plaintiff also testified that he has used illegal drugs in the past, mostly marijuana because it helped him sleep during manic episodes, and ceased using marijuana in November 2010. (AR 43-45, 52-53) Plaintiff testified that he has not overused prescription pain medication in any meaningful way. (AR. 45-46) In the summer of 2010, Plaintiff was arrested three times in a three week period. (AR. 47) The first time he was arrested, he was charged with taking down political signs and was put through the mental health court program and required to enroll in La Frontera's seriously mentally ill ("SMI") program. (AR. 47-48) Plaintiff indicated that he was arrested twice more for domestic violence incidents and ultimately sentenced to diversion. (AR. 48-49) After quitting his job in June of 2010, Plaintiff testified that he followed a music band around the country attending their concerts for a month or a month and a half. (AR. 49-50) He spent some time in California where he was prescribed a medical marijuana card. (AR. 50) Plaintiff drives, but not for long distances and not often because his medication has, for approximately 18 months, made him "bump into things." (AR. 51)

Plaintiff testified that even with his medication, he is very lethargic and suffers problems with sleep, concentration and memory. (AR. 58) When depressed, Plaintiff

withdraws, remaining in his room sleeping, not able to go out and do things or engage in conversation with his wife. (AR. 60) During manic episodes, Plaintiff stated that he would not sleep, that he would hike or garden excessively, sometimes talking to himself, and that he gets extremely irritable. (AR. 60-61) Plaintiff testified that since becoming sober, his symptoms have become worse in some sense because of the side effects of the medications he is prescribed. (AR. 63) As side effects to his medication, Plaintiff lists weight gain, disturbed sleep, depression, shaky hands, problems with memory and concentration, and a desire to be alone. (AR. 63) While he has not suffered any manic episodes since being medicated, Plaintiff states that he has been in a prolonged state of depression. (AR. 64)

A vocational expert ("VE") testified that Plaintiff would not be able to perform at any of his past relevant work, even if limited to simple routine tasks, because the work has all been complex and skilled. (AR. 65) The ALJ posed the following hypothetical limitations to the VE: capable of medium level work, cannot climb ladders ropes or scaffolds; can frequently use ramps, stairs or stools; limited to simple, routine tasks but cannot do such tasks in a fast-paced production environment, can occasionally interact with supervisors and co-workers and is further limited to only brief, intermittent and superficial public contact; can attend and concentrate for two hours, then needs to take a 10 to 15 minute break, attend and concentrate for two more hours, then needs to take a 30 to 60 minute lunch, can then attend and concentrate for another two hours, needs to take another 10 to 15 minute break before he can attend and concentrate for two more hours. (AR. 65-66)

The VE attested that a hypothetical individual would be able to perform the work of a landscape specialist, an auto detailer, or a lot attendant, all three being medium, unskilled jobs. (AR. 67) The VE testified that the DOT definitions for these three positions do not account for dealing with supervisors, co-workers and the public but do address dealing with people beyond giving and receiving instructions. (AR. 67) According to the VE, an individual would be unable to maintain employment if they

1   cannot attend and concentrate in two hour blocks of time throughout an eight hour work
2   day. (AR. 68)

3         After testimony was completed, the ALJ and Plaintiff's counsel discussed the
4   missing records from Plaintiff's treating psychiatrist, Dr. Tena Moyer. The ALJ asked
5   Plaintiff's counsel to "make a good try" with Dr. Moyer to obtain the missing medical
6   records. (AR. 69) In the event that counsel was unsuccessful, the ALJ indicated that he
7   would send a letter asking the doctor to provide the records. (AR. 69, 70) He was less
8   inclined to issue a subpoena. (AR. 69) The ALJ reiterated the need for Dr. Moyer's
9   records because "she[] made a very compelling medical source statement, but I don't
10  have any backup." (AR. 70)

11        The ALJ issued a decision on March 1, 2013, finding Plaintiff not disabled within
12  the meaning of the Social Security Act. (AR. 14-25) This decision became the
13  Commissioner's final decision when the Appeals Council denied review. (AR 1-4).
14  Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).
15  (Doc. 19)

16  **STANDARD**

17        Congress has provided a limited scope of judicial review of a Commissioner's
18  decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made
19  through an ALJ, when the determination is not based on legal error and is supported by
20  substantial evidence. *See Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir.1985); *Tackett v.*
21  *Apfel,* 180 F.3d 1094, 1097 (9th Cir.1999). "The [Commissioner's] determination that a
22  plaintiff is not disabled will be upheld if the findings of fact are supported by substantial
23  evidence." *Delgado v. Heckler,* 722 F.2d 570, 572 (9th Cir.1983) (citing 42 U.S.C. §
24  405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger,* 514
25  F.2d 1112, 1119 n 10 (9th Cir.1975), but less than a preponderance. *McAllister v.*
26  *Sullivan,* 888 F.2d 599, 601–02 (9th Cir.1989). Substantial evidence "means such
27  evidence as a reasonable mind might accept as adequate to support a conclusion."
28  *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences

and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze,* 348 F.2d 289, 293 (9th Cir.1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir.1989) (quoting *Kornock v. Harris,* 648 F.2d 525, 526 (9th Cir.1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services,* 839 F.2d 432, 433 (9th Cir.1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen,* 812 F.2d 1226, 1229–30 (9th Cir.1987).

**DISCUSSION**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir.2009); *Vernoff v. Astrue,* 568 F.3d 1102, 1105 (9th Cir.2009).

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 416.920. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. § 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(g). Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments. *Maier v. Comm'r of the Soc. Sec. Admin.,* 154 F.3d 913, 914–15 (9th Cir.1998) (per curiam).

**THE ALJ'S FINDINGS IN PERTINENT PART**

The ALJ found that Plaintiff has not in engaged in substantial work activity since his alleged onset date of July 1, 2010 (AR. 17) The ALJ further found that Plaintiff had the following severe impairments: bipolar type I disorder, most recent episode depressed, without psychotic features, cannabis abuse and alcohol abuse. (AR. 17). He determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (AR. 17) The ALJ found that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. §§404.1567(c) and 416.967(c) except that he cannot climb ladders, ropes or scaffolds. (AR. 18).  The ALJ, after considering testimony

from the VE, concluded that Plaintiff is unable to perform any past relevant work.  (AR. 23).  Taking into consideration Plaintiff's age, education, work experience and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR. 24) Therefore, the ALJ found that Plaintiff has not been under a disability as defined in the Social Security Act at any time from July 1, 2010 through the date of the decision.  (AR. 25)

**THE ALJ FAILED TO FULLY DEVELOP THE RECORD**

The ALJ has an affirmative "duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel." *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir.2003) (ellipsis in original) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir.1983)); *see Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir.2001). If evidence from a medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source, including a treating physician, to determine if additional needed information is readily available. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1); *see also Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir.2005) ("[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence [or] the ALJ's own finding that the record is inadequate"). "In cases of mental impairments," the ALJ's duty to clarify and develop the record "is especially important." *DeLorme v. Sullivan,* 924 F.2d 841, 849 (9th Cir.1991); *see also Tonapetyan,* 242 F.3d at 1150 ("The ALJ's duty to develop the record fully is ... heightened where the claimant may be mentally ill and thus unable to protect her own interests."). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. *White v. Barnhart,* 287 F.3d 903, 908 (10th Cir.2001).

At the hearing, the ALJ noted that the administrative record only contained a medical source statement from treating psychiatrist Dr. Tena Moyer. (AR. 36, 70) Plaintiff's counsel indicated on the record that Dr. Moyer transitioned from practicing at La Frontera to private practice and that in the transition Plaintiff's medical records had

either been lost or destroyed. (AR. 35, 36) Plaintiff's counsel requested that the records be subpoenaed or that they "at least get some type of statement from Dr. Moyer." (AR. 35) At the end of the administrative hearing, the ALJ stated that he would write a letter requesting the records from Dr. Moyer if counsel was again unable to procure them through normal channels. (AR. 70) There is conflicting information as to whether the records are simply archived or lost. (AR. 318, 316, 928) Subsequent to the hearing, Plaintiff's counsel moved for a supplemental hearing to take the testimony of Dr. Moyer. (AR. 319) In his final decision, the ALJ denied this request, stating that Plaintiff failed to articulate reasons why such testimony was necessary and not cumulative. (AR. 14) The ALJ opined that because Dr. Moyer submitted her medical source statement articulating her psychiatric diagnosis and opinions regarding Plaintiff's mental status and functional capacity, there would be no probative value to her "reiterating her opinions and reasoning." (AR. 14) Plaintiff asserts that the ALJ failed to fulfill his duty to develop the medical evidence by not attempting to obtain the treatment records or taking Dr. Moyer's testimony at a supplemental hearing before reaching a decision in this case. (Doc. 19, pp. 19-20) The Court agrees.

Plaintiff testified that he started seeing Dr. Moyer in private practice in June of 2010 and that he continued to see her until October of 2011. (AR. 62) Prior to the administrative hearing, Dr. Moyer submitted a letter outlining her treatment of Plaintiff during the 16 months that she treated him. (AR. 903) During the hearing, the ALJ noted that the administrative record did not include any medical evidence from Dr. Moyer. (AR. 35, 70) Plaintiff's counsel explained that he had made several requests for Plaintiff's records from Dr. Moyer, but that the records were either missing or destroyed. (AR. 35) At the end of the hearing, Plaintiff's counsel requested that the ALJ write a letter requesting the records from Dr. Moyer. (AR. 70) The ALJ stated in response that he wanted counsel to make another effort to obtain the records, but that "[…] if that doesn't work, what I need you to do is send me something in writing, giving me the details, her address, telephone number and all that, so that we can send her a letter asking her to

please provide said documents." (AR. 69) The ALJ went on to further state "[…] we need, we really need those documents. She's made a very compelling medical source statement, but I don't have any backup." (AR. 70) After the hearing, Plaintiff's counsel sent the ALJ a letter outlining, in detail, the attempts to gain access to Dr. Moyer's records and requesting that a supplemental hearing be granted to take her testimony. (AR. 319) In his final decision, the ALJ denied Plaintiff's request for a supplemental hearing to take the testimony of Dr. Moyer. (AR. 14) According to Plaintiff, the ALJ never attempted to send a letter to Dr. Moyer and never issued a subpoena for the records. (AR. 324)

Here, the ALJ recognized during the hearing that the medical record potentially did not contain 16 months of Plaintiff's treatment records. The ALJ's recognition that the medical evidence was incomplete prompted his duty to contact Dr. Moyer to see if additional treatment records were available, or to have her provide testimony to fully develop the record. His failure to do so was error. *See Webb,* 433 F.3d at 687 (the ALJ erred in failing to meet his "affirmative duty to supplement [the claimant's] medical record, to the extent it was incomplete, before rejecting" the claimant's application for benefits).

Further, it is apparent that additional treatment notes—especially those pertaining to Plaintiff's mental health treatment—may have impacted the ALJ's credibility and disability determinations in this case. At the hearing, Plaintiff testified to his continued symptoms and impairments as a result of his bipolar disorder. (AR. 63, 64) In Dr. Moyer's statement letter dated November 14, 2012, as well as in her Medical Assessment dated October 21, 2011, she opines that Plaintiff has various impairments impeding his ability to work and is "completely disabled by his disease." (AR. 854, 903) In his final decision, the ALJ rejected the opinion of Dr. Moyer, noting that "[…] Dr. Moyer has produced no treatment records, let alone treatment records consistent with her opinions." (AR. 21) Further, the ALJ found that, although the record is consistent with Plaintiff's claims from November 2010 through January 2011, "[…] the treatment records actually

before me do not support the level of symptoms [Dr. Moyer] claims since January 2011 and no treatment records indicating otherwise have been provided." (AR. 21) The ALJ also discredited Plaintiff's subjective testimony, rejecting his allegation that his symptoms have persisted, or worsened, since January 2011, because "there is little psychiatric evidence to support this assertion," and "there is ample reason to be cautious accepting [Plaintiff's] allegations in the absence of substantial objective medical support." (AR. 22, 23) Essentially, after rejecting Plaintiff's counsel's repeated requests for assistance in obtaining Dr. Moyer's records, and subsequently denying a request to take Dr. Moyer's testimony in lieu of her records, the ALJ rejected Dr. Moyer's opinion and found Plaintiff's subjective testimony not credible due to a lack of supporting treatment records from Dr. Moyer. As such, Dr. Moyer's treatment records or testimony might impact on the ALJ's credibility and disability determination since it could corroborate Plaintiff's subjective symptoms as well as Dr. Moyer's opinions regarding Plaintiff's impairments and persisting symptoms. Therefore, in contrast with the ALJ's determination, there is significant probative value to Dr. Moyer "reiterating her opinions and reasoning in this matter" as it would potentially change the outcome of the case. As the ALJ stated at the hearing, Dr. Moyer's opinions are compelling and the ALJ erred in making findings without such evidence.

### CONCLUSION

Since the ALJ failed to fully develop the record, outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. *Burrell v. Colvin,* 775 F.3d 1133, 1141 (9th Cir.2014) (citations omitted).

Accordingly, the Court concludes that remand is warranted for further proceedings, including the development of the medical treatment evidence generated from Dr. Moyer, and for the ALJ to reconsider Plaintiff's subjective symptoms and

credibility, as well as the reliability of Dr. Moyer's opinions, after the record has been developed.

     The Clerk of Court is DIRECTED to enter Judgment accordingly and to close its file in this matter.

        Dated this 29th day of September, 2015

**CHARLES R. PYLE**
UNITED STATES MAGISTRATE JUDGE